UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| STARR INDEMNITY & LIABILITY COMPANY and NEW YORK MARINE & GENERAL INSURANCE CO., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 4:11CV809 JAR |
| CONTINENTAL CEMENT COMPANY, L.L.C., SUMMIT MATERIALS, L.L.C., and THE UNITED STATES ARMY CORPS OF ENGINEERS, | ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on defendant United States Army Corps of Engineers' Motion to Dismiss (ECF No. 40). The United States Army Corps of Engineers ("the Corps") argues that the United States has not waived its sovereign immunity, or the immunity of its agency, for the claims alleged in Plaintiffs' Complaint, and that there is no justiciable controversy between Plaintiffs and the United States. This matter is fully briefed and ready for disposition.

**BACKGROUND**

Plaintiff Starr Indemnity and Liability Company ("Starr") issued to Continental Cement Company ("Continental") and Summit Materials, LLC ("Summit") a marine insurance policy ("Policy"), and plaintiffs Starr and New York Marine & General Insurance Company (collectively, "Starr/NY Marine" or "Plaintiffs") issued to Continental an excess protection policy and liability marine insurance policy ("Excess Policy"). (Third Amended Complaint for Declaratory Judgment ("Compl."), ECF No. 36, ¶¶3, 4).

On or around February 7, 2011, the Mark Twain barge, which had been moored at Continental's dock and fully loaded with cement, sank. (Id., ¶¶10-11). The barge is currently resting between Continental's dock and the shore on the bottom of the Mississippi River. (Id., ¶11).

On or around May 9, 2011, Plaintiffs filed this lawsuit. On or around January 19, 2012, Plaintiffs filed their Third Amended Complaint seeking declaratory relief that (1) the sinking of the Mark Twain was not caused by a named peril, as required under the Policy, that (2) Continental failed to exercise due diligence, as required under the Policy, and that (3) the removal of the Mark Twain would be an uncovered salvage operation because it is not compelled by law, as required under the policy. (Id., p. 12).

As part of their Complaint, Plaintiffs seek judicial review of the "administrative decision" by the Corps. (Id., p. 8). Although they claim they are unsure if Corps's two letters, dated June 22, 2011 and August 4, 2011, can be construed as "orders" (id., ¶¶37, 39-40),[1] Plaintiffs nevertheless assert that they may proceed against the Corps "without further administrative action because the Corps has not promulgated any administrative procedures that allow review of a determination regarding the removal of a sunken barge and, therefore, the Administrative Procedures Act [("APA")]allows [Plaintiffs] to seek judicial review of the Corps's decision." (Id., ¶47)(citing 33 C.F.R. §331.1 *et seq.* (2011)).[2]

---

[1] Plaintiffs also argue that "**[i]f the Corps has actually issued an order**, such an order is invalid[.]" (Compl., ¶46)(emphasis added).

[2] 33 C.F.R. §331.1(a) provides that, "The purpose of this part is to establish policies and procedures to be used for the administrative appeal of approved jurisdictional determinations (JDs), permit applications denied with prejudice, and declined permits. The appeal process will allow the affected party to pursue an administrative appeal of certain Corps of Engineers decisions with which they disagree. The basis for an appeal and the specific policies and procedures of the appeal process are described in the following sections. It shall be the policy of the Corps of Engineers to promote and maintain an administrative appeal process that is independent, objective, fair, prompt, and efficient."

The Corps filed a Motion to Dismiss because it asserts that this Court does not does not have jurisdiction over Plaintiff's claims. That is, the Court does not have a "final agency action" by the Corps to review. In addition, the Corps argues that there is no controversy between Plaintiffs and the Corps.

## DISCUSSION

**I.   MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(b)(1)**

A.   Standard

A Rule 12(b)(1) motion challenges whether the district court has subject matter jurisdiction to hear the matter. Johnson v. United States, 534 F.3d 958, 964 (8th Cir. 2008). "A plaintiff has the burden of establishing subject matter jurisdiction[.]" Jones v. Gale, 470 F.3d 1261, 1265 (8th Cir. 2006) (citing Hoekel v. Plumbing Planning Corp., 20 F.3d 839, 840 (8th Cir. 1994)); Great Rivers Habitat Alliance v. Fed. Emergency Mgmt. Agency, 615 F.3d 985, 988 (8th Cir. 2010)("The burden of proving federal jurisdiction, however, is on the party seeking to establish it, and this burden may not be shifted to the other party.")(internal quotation omitted). "Because jurisdiction is a threshold question, the court may look outside the pleadings in order to determine whether subject matter jurisdiction exists." Green Acres Enters., Inc. v. United States, 418 F.3d 852, 856 (8th Cir. 2005); Richards v. Great Western Ins. Co., No. 11-CV-965, 2012 U.S. Dist. LEXIS 30109, at *11 (D. Minn. Jan. 13, 2012); Osborn v. United States, 918 F.2d 724, 730 (8th Cir. 1990)(if the defendant thinks the court lacks jurisdiction, a Rule 12(b)(1) motion may be supported with affidavits or other documents).

B.   Analysis

1. Waiver of Immunity/Final Agency Action

As the sovereign, the United States of America and its agencies enjoy immunity from suit, absent a waiver. Great Rivers Habitat Alliance, 615 F.3d at 988; FDIC v. Meyer, 510 U.S. 471, 475, 114 S. Ct. 996, 127 L. Ed. 2d 308 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit"). "The APA waives sovereign immunity as to suits seeking judicial review where such review has not been expressly authorized by statute, except when either the statute precludes judicial review or 'agency action is committed to agency discretion by law.'" Great Rivers Habitat Alliance, 615 F.3d at 989 (citing 5 U.S.C. § 701(a)). The APA also provides that "final agency action for which there is no other adequate remedy in a court [is] subject to judicial review." 5 U.S.C. § 704; Sabhari v. Reno, 197 F.3d 938, 943 (8th Cir. 1999); Taylor v. Rice, No. 10-4746, 2012 U.S. Dist. LEXIS 8411, at *18 (D. Minn. Jan. 6, 2012)(reaffirming that final "agency action" is required if a plaintiff seeks relief under the APA).

At issue in its Motion is whether the Corps has performed a final agency action that would subject it to judicial review. Plaintiffs base their belief that the Corps has issued a final agency action upon two letters. (Plaintiffs' Response to U.S. Army Corps of Engineers' Motion to Dismiss ("Response"), ECF No. 43, p. 1). First, on June 22, 2011, the Corps wrote a letter to Continental stating that it was a "reminder that the sunken barge and the concrete content within the barge must be removed in its entirety from the Mississippi River as soon as safe working conditions and lower river elevations present the opportunity." (ECF No. 13-3). Second, in the August 4, 2011 letter, the Corps informed counsel for Plaintiffs that the Corps's position remained that "that this barge requires removal." (ECF No. 20-1). The Corps stated that the presence of the sunken barge represented a violation of both §404 of the Clean Water Act and §10 of the Rivers and Harbors Act. In addition, the Corps noted that the sunken barge potentially violated the Wreck Act, 33 U.S.C. §409. The Corps concluded this letter by stating, "Our goal at this time is simply to work

collaboratively to ensure that this barge is removed. If, however, we are unable to work collaboratively in this removal effort, we will have no alternative other than to take legal action to ensure environmental protection and navigation safety." (Id.).

Plaintiffs maintain that the Corps's letters constitute a final agency action because they assert violations of the law as a result of the sunken barge that require immediate action, including the submission of a plan for removing the barge. (Response, p. 5). Plaintiffs note that in the August 4, 2011 letter the Corps threatens litigation, criminal fines, and penalties if the barge is not removed. See id.; ECF No. 20-1.

In turn, the Corps argues that the letters are of an interlocutory nature and do not serve as a final agency action. (United States Army Corps of Engineers' Reply in Support of its Motion to Dismiss ("Reply"), ECF No. 44, p. 3). Rather, the letters merely state the Corps's position that the statutes have been violated, warn of potential consequences of the violation, and seek to work with the parties to obtain removal of the sunken barge. (Id.).

This case appears similar to Agri-Trans Corp. v. Gladders Barge Line, Inc., 721 F.2d 1005 (5th Cir.1983). In that case, the government argued that the Corps's determination that the wreck posed an obstacle to navigation or navigable capacity was unreviewable. Id. at 1010. The letters between the Corps and the parties indicated that the vessel could pose a hazard to navigation and represent a future liability to its owner. Id. at 1011. The Fifth Circuit held that the Corps never "made an administrative determination that [the barge] presently constitutes an obstacle to navigation or navigable capacity." Id. at 1010-11. As a result, the Court held that it did not have subject matter jurisdiction: "[i]f the Corps has never administratively determined that the [vessel] as currently situated obstructs navigation, it follows that there is nothing for the courts to review." Id. at 1011. Thus, the Fifth Circuit vacated the district court's holding that the vessel presently posed no obstacle to navigation or navigable capacity because that issue was not ripe for

consideration "absent antecedent administrative action." Id. ("A declaratory judgment action should not be used to circumvent the usual progression of administrative determination and judicial review.").

Similarly, here, there is no administrative action that affords this Court jurisdiction. Rather, Plaintiffs attempt to create an administrative record out of whole cloth from a couple of letters. In these letters, the Corps merely "reminds" Continental of its duties, states its position that the barge has to be removed, and outlines the potential penalties facing the responsible party if the barge is not removed. Throughout, the Corps makes clear that its evaluation of the situation is ongoing and that its "goal at this time is simply to work collaboratively to ensure that the barge is removed." (ECF No. 20-1, p. 3). In fact, even Plaintiffs' counsel does not seem to view the Corps's letter as a final agency action. Counsel specifically asked the Corps if it had issued an order requiring Continental to remove the barge. (ECF No. 13-4). Likewise, throughout Plaintiffs' Complaint, Plaintiffs question whether the letters constitute orders by the Corps. See Compl., ¶¶40, 46; see also ¶45 (the Corp "has failed to conduct the analysis required of it by law"). The Corps has not made a final agency decision in that it has not made an ultimate determination of liability, nor has it assessed any legal consequences from the continued presence of the barge in the Mississippi River. The Court finds that there is no final agency action and, therefore, the Corps has not waived its sovereign immunity. See Great Rivers Habitat Alliance, 615 F.3d at 989. The Court grants the Corps's Motion to Dismiss on this basis.

2. Case or Controversy

The Corps also argues that there is no controversy between it and Plaintiffs. Rather, any controversy exists solely between Plaintiffs and the barge owner, Continental. (Memorandum in

Support of United States Army Corps of Engineers' Motion to Dismiss ("Memorandum"), ECF No. 40-1, p. 5).[1]

In determining whether there is an "actual controversy" between the Corps and Plaintiffs, the test is whether "there is a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Maryland Casualty Co. v. Pacific Coal and Oil Co., 312 U.S. 270, 273, 61 S. Ct. 510, 85 L. Ed. 826 (1941); Lake Carriers' Assn. v. MacMullan, 406 U.S. 498, 506, 32 L. Ed. 2d 257, 92 S. Ct. 1749 (1972). The controversy must be definite and concrete touching the legal relations of parties having adverse legal interests. The questions presenting a controversy must not be abstract but must define issues which are concrete and specific. Cass Cty. v. United States, 570 F.2d 737, 740 (8th Cir. 1978).

Plaintiffs allege that a real "case or controversy" exists between Starr/NY Marine and the Corps because:

A. The Corps has threatened to Starr/NY Marine with civil and criminal penalties pursuant to 33 U.S.C. §411, which provides finds and imprisonment to "Every person and every corporation that shall violate, or that shall knowingly aid, abet, authorize, or instigate a violation of the provisions of sections 407, 408, 409, 414 and 415 of this title."

B. Starr/NY Marine is potentially liable should Continental abandon the barge to the Corps, which could then seek to recover removal costs.

C. The Corps could arguably remove the sunken barge based [upon] its own factual finding of abandonment with only minimal notice and then seek to recover removal costs.

---

[1]The Corps admits, however, that a justiciable controversy with Plaintiffs could arise in the future. (Memorandum, p. 5, n.2). For example, the Corps could bring a civil action under the Rivers and Harbors Act of 1899, 33 U.S.C. §§401-76. The Corps states that, although the coverage of the Rivers and Harbors Act is broad, such a claim currently is not justiciable because the United States has not filed such a complaint against the Mark Twain's owner and operator. (Id.).

D. If the barge must be removed under statutory power or otherwise pursuant to the law, Starr/NY Marine is the financially responsible party for that removal.

(Compl., ¶48). Plaintiffs claim that, as a responsible party, they have standing to challenge the bases for the Corps's determination that the barge must be raised. (Response, p. 10)(citing 5 U.S.C. §702)("A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.").

Plaintiffs cite <u>Caldwell v. Gurley Ref. Co.</u>, 755 F.2d 645, 649 (8th Cir. 1985) to support their claim that a real case or controversy exists. <u>See</u> Response, pp. 10-11. In that action, R.A. Caldwell, the lessor, brought a claim against Gurley Refining Company, the lessee, under the Declaratory Judgment Act, 28 U.S.C. §2201, for the court to determine his rights and obligations under the lease and Caldwell's right of indemnity against Gurley resulting from liability to the EPA for cleanup operations. The Eighth Circuit found that there was a justiciable controversy between Caldwell and Gurley because the EPA, the United States Coast Guard and certain Arkansas state agencies informed both Caldwell and Gurley that they would be held responsible for all costs incurred in cleaning up an oil spill. <u>Id.</u> at 674, 650. Unlike in <u>Caldwell</u>, the issue in this Motion is whether a case or controversy exists between the government and an insurer. The Eighth Circuit's determination in <u>Caldwell</u> that there was a live case or controversy between two private parties, where the EPA had clearly made a finding of liability against the parties, is inapposite to the present action where the crux is whether the government has made a finding of liability.

Likewise, <u>United States v. Cargill, Inc.</u>, 367 F.2d 971 (5th Cir. 1966) is irrelevant to the issues before the Court. Plaintiffs cite this case for the proposition that the United States sued not only the vessel owners for violating the Rivers and Harbors Act, but also the insurers. <u>See</u>

Response, p. 11 (citing Cargill, 367 F.2d at 972, n.1).[1] As noted by the Corps, the Fifth Circuit merely mentioned the insurers as parties in a footnote and did not provide any analysis as to why they were parties to the lawsuit or if including the insurers was proper. (Reply, p. 7). Thus, Cargill provides no precedential value for finding a controversy between the Corps and Plaintiffs.

Here, as determined in Cargill, the parties and the Corps do not dispute that, under the Rivers and Harbors Act, the government could order the removal of the barge and obtain the costs incurred for such removal from all responsible parties. See 367 F.2d at 976. Instead, the issue is whether such a finding of liability and order of removal has been made. Plaintiffs' allegations that purport to allege a live case or controversy instead only refer to threats of future action or contingent liability against Plaintiffs (Compl., ¶48)(noting that the Corps "has threatened" penalties and that Plaintiffs are "potentially liable"). These allegations are abstract concepts and/or speculation that lack the concreteness of an actual case or controversy. As the matter stands now, the Plaintiffs' dispute is with Continental. The Court finds that there is no controversy between Plaintiffs and the Corps at this time therefore the Court grants the Corps's Motion to Dismiss on that basis.

## **CONCLUSION**

Accordingly,

---

[1] The issue before the Fifth Circuit was "whether one may abandon with impunity an allegedly negligently sunk vessel which obstructs navigation or may the Government compel the negligent party to remove it or pay the cost of removal." Cargill, 367 F.2d at 973.

**IT IS HEREBY ORDERED** that United States Army Corps of Engineers' Motion to Dismiss (ECF No. 40) is **GRANTED**. The United States Army Corps of Engineers is **DISMISSED** from this action.

Dated this 29th day of March, 2012.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE