UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| STARR INDEMNITY & LIABILITY ) <br> COMPANY and NEW YORK MARINE & ) <br> GENERAL INSURANCE CO., ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> CONTINENTAL CEMENT COMPANY, ) <br> L.L.C., SUMMIT MATERIALS, L.L.C., and ) <br> THE UNITED STATES ARMY CORPS OF ) <br> ENGINEERS, ) <br> ) <br> Defendants. ) | Case No. 4:11CV809 JAR |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion to Compel ("Motion") (ECF No. 73) and Plaintiffs' Motion to Compel Attorneys' Fees Invoices ("Fees Motion") (ECF No. 82). These matters have been briefed and are ready for disposition.

## DISCUSSION

**A.  Defendants' Motion to Compel Discovery**

In its Motion, Continental Cement L.L.C. and Summit Materials, L.L.C. ("Continental") asks for an order compelling Starr Indemnity & Liability Company and New York Marine & General Insurance Co. ("Starr") "to produce documents and answer deposition questions ... on (i) the advice of counsel upon which Starr claims to have relied in denying coverage for Continental's claims and (ii) the reserves set by Starr in the ordinary course of its business and the documents it relied upon to do so." (Motion, p. 15).

1.  Advice of Counsel

Rule 26(b) provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party...." Fed.R.Civ.P. 26(b). However, "it is the long established rule that confidential communications between an attorney and his client are absolutely privileged from disclosure against the will of the client." Diversified Industries, Inc. v. Meradith, 572 F.2d 596, 601 (8th Cir.1977).

The attorney-client privilege may be implicitly waived. United States v. Workman, 138 F.3d 1261, 1263 (8th Cir. 1998)(citing Hollins v. Powell, 773 F.2d 191, 196 (8th Cir. 1985)). "One way that is done is by raising attorney advice as a defense." Workman, 138 F.3d at 1263 (citing Sedco International, S.A. v. Cory, 683 F.2d 1201, 1206 (8th Cir. 1982)). Both of the parties agree that the Court should apply the test from Hearn v. Rhay, 68 F.R.D. 574 (E.D. Wash. 1975) to determine if there was a waiver:

> All of these established exceptions to the rules of privilege have a common denominator; in each instance, the party asserting the privilege placed information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would have been manifestly unfair to the opposing party. The factors common to each exception may be summarized as follows:(1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense. Thus, where these three conditions exist, a court should find that the party asserting a privilege has impliedly waived it through his own affirmative conduct.

Id., at 581.

Continental contends that Starr has asserted the advice of counsel as a basis for declining coverage, thereby waiving the attorney-client privilege. (Continental's Reply Memorandum in Support of its Motion to Compel ("Reply"), ECF No. 78, pp. 1-9). Three witnesses responsible for handling Starr's claims testified they relied on the advice of counsel in declining coverage for Continental's claim. (Id., p. 4). Starr also stated in a discovery response that "it relie[d] on ... legal

interpretation and legal advice in analyzing and/or denying insurance claims of the type involved in the sinking of the MARK TWAIN." (Id., p. 4). Finally, Continental claims that its allegation of bad faith puts the advice of counsel at issue. (Motion, p. 9).

Starr claims that it has not waived the attorney-client privilege because it has not raised the "advice of counsel" defense. (Response to Continental's Motion to Compel Disclosure of Privileged Information ("Response"), ECF No. 77, p. 2). Starr contends it has not asserted advice of counsel as an affirmative defense, nor made it an element of its defense in this case. Finally, Starr asserts that Continental's bad faith claim alone does not put the advice of counsel at issue. See id., pp. 7-8).

The Court finds that, at this point, Starr has not performed an "affirmative act" waiving the attorney-client privilege. Hearn, 68 F.R.D. at 581. Starr's consultation with its counsel did not constitute a waiver of the attorney-client privilege because it has not raised an advice of counsel defense. Rather, Starr's executives testified that they merely consulted with their counsel as part of their decision-making process. Starr's witnesses made clear that they primarily relied on their experience and own reading of the policy when making their determinations. For example, Paul Ferguson, Vice President for Hull & Liability Claims for Starr, stated that counsel's advice was "part of my overall decision with all of the other factors." (Response, p. 4). Mr. Ferguson stated that "counsel's opinions supported my original position." (Reply, p. 7). Continental has not provided any evidence that Starr changed course based upon the advice of its counsel or that it would have acted otherwise. The Court finds that this cannot constitute an affirmative act waiving privilege because "if reliance always gave rise to waiver in this circumstance, no one would seek coverage counsel's advice." Botkin v. Donegal Mut. Ins. Co., No. 5:10cv00077, 2011 U.S. Dist. LEXIS 63871, at *19 (W.D. Va. June 15, 2011). Likewise, the Court finds that the mere assertion of a vexatious refusal to pay claim does not waive the attorney-client privilege when Starr has not claimed that the advice of counsel was its basis for denying the claim. The Court, therefore denies

Continental's request for an order compelling Starr to produce documents and answer deposition questions on the advice of counsel upon which Starr claims to have relied in denying coverage for Continental's claims. (Motion, p. 15).

Continental also argues that "[a]part from waiver, many of the questions that Starr's witnesses were instructed not to answer fail to involve privileged communications in any event." (Motion, p. 11). Continental provides only a few examples of these questions.

First, Continental notes that Starr did not provide the identity of the person(s) who drafted the reservation of rights and declination letters. (Motion, p. 11). In response, Starr argues that Continental should not be allowed to inquire into prepared the declination letter, whether counsel prepared some or which parts of the declination letter, and discussions with counsel regarding the declination letter. (Response, p. 15). Starr claims that it cannot detail the specific contributors of the declination letter without revealing attorney-client communications. (Response, p. 15). Starr notes that "[a]ny documents that involve communications between company employees regarding advice of counsel are subject to the attorney-client privilege." Response, p. 14 (citing Medical Protective, Co. v. Bubenik, No. 4:06CV01639 ERW, 2008 U.S. Dist. LEXIS 112227, at *6 (E.D. Mo. May 20, 2008)). The Court will not compel Starr to identify the author(s) of the reservation of rights and declination letters because it appears those responses would reveal attorney-client communications.

Second, Continental claims that internal communications between O'Connor, Montgomery, and Ferguson about declining coverage do not raise any privilege issues and "whether O'Connor researched the law prior to signing the declination letter does not raise issues of privilege." (Motion, p. 11). In reviewing O'Connor's deposition testimony, however, it appears that O'Connor answered those questions, excluding communications with Mr. Mondl or regarding Mr. Mondl's

advice. (ECF No. 73-7). The Court finds that Starr's objections regarding attorney-client communications are well-taken and denies Continental's Motion to Compel in that respect.

2. Reserves

Continental argues that it is entitled to documents that reflect the reserves amount set by Starr because such a determination was made prior to litigation and/or anticipation of litigation. Continental contends that Starr could not have anticipated litigation as early as it claims. (Reply, p. 8). The Mark Twain sank on February 7, 2011, and Starr first alleged that it anticipated litigation on February 9, 2011. (Id.). Starr, however, did not retain counsel until March 4, 2011. (Id.). Carrier conducted an investigation on Starr's behalf on March 11, 28, and 29, 2011. (Id.). Starr declined coverage of Continental's claim on May 9, 2011. (Id.). Continental argues that it should be able to discover the reserves amount set by Starr prior to litigation. In the alternative, if the reserves amount is privileged, then Continental argues that it has a substantial need for this information that overrides any assertion of privilege. (Motion, pp. 13-14).

Starr argues that Continental seeks not the "initial reserves, set in the ordinary course, but those reserves made in anticipation of litigation." (Response, p. 11). Starr contends that the reserves amount set, even prior to litigation, is subject to the work product doctrine because Starr anticipated litigation. Starr claims that, even though it did not retain counsel until March 4, 2011, it had questions regarding whether there would be insurance coverage for this loss, at least as of February 17, 2011. (Id., p. 11). Starr also asserts that Continental does not have a substantial need; rather, Starr claims that the reserves information is largely irrelevant to this action. (Id., pp. 13-14).

"Reserves are an insurer's estimates of potential losses due to claims on its policies." Spirco Envtl., Inc. v. Am. Int'l Specialty Lines Ins. Co., 2006 U.S. Dist. LEXIS 61834 (E.D. Mo. Aug. 30, 2006)(citing J.C. Assocs. v. Fid. & Guar. Ins. Co., 2003 U.S. Dist. LEXIS 6145, 2003 WL 1889015

at *1 (D.D.C. 2003)). This Court has recognized that setting reserve limits can have work product implications:

> The failure of an insurer to offer a reasonable amount to settle a claim, on a claim of bad faith breach of duty, might be evidenced by the insurer's setting aside a substantially greater amount of reserve for the claim. [J.C. Assocs., 2003 U.S. Dist. LEXIS 6145, 2003 WL 1889015 at *1] However, where the issue is one of coverage under the policy vel non, reserve information might involve the consideration of potential liability; in this regard it may qualify as work product, e.g., expressions of opinion or fact by an insurer's agent regarding liability in potential litigation. Id. In this regard, unless the plaintiff shows a great need that overcomes the importance of accurate reserve figures, this information ought to be protected from disclosure. Id.; Coltec Indus. v. American Motorists Ins. Co., 197 F.R.D. 368, 372 (N.D.Ill. 2000). The same principles apply to reinsurance information. Indep. Petrochemical Corp. v. Aetna Cas. & Sur. Co., 117 F.R.D. 283, 288 (D.D.C. 1986).

Spirco Envtl., Inc., 2006 U.S. Dist. LEXIS 61834 at *3.

The Court finds that the actual amount of reserves set by Starr is not subject to the work product doctrine and is discoverable. See Council Tower Ass'n v. Axis Specialty Ins. Co., No. 4:08CV1605 CDP, 2009 U.S. Dist. LEXIS 36510, at *4 (E.D. Mo. Apr. 30, 2009)("the dates set and amounts of any reserves are discoverable"). The Court, however, finds that "the work-product doctrine covers information about the process of setting reserves -- how and why they were set -- [Starr] is not required to answer questions that seek this type of information." Id. Therefore, Starr shall provide the reserves amount set but is not required to answer any questions or provide any documents regarding the process of setting reserves. Id. Moreover, the Court does not believe that Continental has demonstrated any substantial need for the documentation regarding the process of setting reserves.[1]

   3.  Privilege Log

---

[1] The Court notes that its ruling is that the reserves amount is discoverable. The Court does not make any determination regarding admissibility.

Continental maintains that several items on the privilege log are not privileged because they are not communications with counsel and are not work product. The issue of the privilege log was not raised before this Court until Starr's Response. (Response, p. 11, n.5). Therein, Starr stated it accidentally had provided an incomplete privilege log (ECF No. 73-1), but that it was providing a complete log to Continental (ECF No. 77-1). (Id.). In its Reply, Continental contends that Starr cannot assert the work product doctrine to avoid producing various documents. Continental argues that Starr cannot withhold documents on the basis of the work product doctrine based upon when the documents were created, *e.g.*, 67 documents created before the declination date of May 9, 2011 and 19 documents created before it hired counsel on March 4, 2011. Except by these categories, Continental does not outline what specific documents it claims are being erroneously withheld from production. The Court assumes that these issues are resolved by the Court's determinations above. To the extent that they are not, the parties may address any remaining issues before the Court by oral or written motion.

### B. Plaintiffs' Motion to Compel Attorneys' Fees Invoices

In its First Request for Production, Document No. 37, Starr requested documents showing the nature and extent of Continental's claim for attorneys' fees. Continental objected, arguing that the request was premature and that the documents included privileged communications. In its Second Request for Production of Documents, Starr requested documents supporting Continental's claim for attorneys' fees. Continental objected to the request as premature and privileged, but produced cancelled checks showing payments for attorneys' fees. In a supplemental disclosure, Continental stated that other members of Goldstein and Price, L.C., who are not counsel on this case, may testify regarding the billing rates in this case, the reasonableness of those rates, the amount of money invoiced to and paid by Continental, and the reasonableness of those amounts in connection with this litigation. (Fees Motion, p. 2). Continental, however, refuses to produce any invoices or

related documents showing its counsels' billing rate, the number of hours worked, and the nature of the work performed.

Starr claims that the invoices are relevant and discoverable because Continental has alleged a claim under Missouri's vexatious refusal to pay statute, §375.420, R.S. Mo. Because the vexatious refusal to pay statute is penal in nature, the insured's claim must be "supported by pleadings and sustained by proof." Smith v. AF & L Ins. Co., 147 S.W.3d 767, 779 (Mo. Ct. App. 2004). In addition, Starr claims that it should not be forced to rely on the canceled checks, which do not contain the same information that invoices would have. Starr asserts that it needs the invoices to challenge the reasonableness of the attorneys' hourly rate and hours worked, among other things. (Fees Motion, p. 4; Reply Brief in Support of Starr's Motion to Compel Attorney Fees Invoices, ECF No. 94, p. 5 (Starr is entitled to utilize invoices to cross-examine witnesses who claim that the amounts paid were reasonable)).

In response, Continental argues that it should not be compelled to produce its attorneys' invoices because it does not intend to use those invoices to prove its attorneys' fees and because such information is protected by the attorney-client privilege and work product doctrine. (Continental's Opposition to Starr's Motion to Compel Attorney's Fees Invoices ("Opposition"), ECF No. 86, p. 1). Continental claims that its invoices are protected by attorney-client privilege because its counsel uses its monthly invoices "to communicate legal advice, litigation strategy, and developments to the client." (Id., p. 4). Continental argues that Starr is not being forced to defend a claim for attorneys' fees in the dark because Continental has provided fourteen checks proving the amount of attorneys' fees paid to date.

"The Court recognizes that ordinarily fee arrangements between client and counsel and the logistics of the payments involved are not matters to which attorney-client privilege attaches, as they are not deemed to be communicative." Comcast of Ill. X, LLC v. Multivision Elecs., Inc., No.

4:06MC675-DJS, 2007 U.S. Dist. LEXIS 37528, at *3-4 (E.D. Mo. May 23, 2007)(citing U.S. v. Sindel, 53 F.3d 874, 876 (8th Cir. 1995); Ralls v. United States, 52 F.3d 223, 225 (9th Cir. 1995); Securities & Exchange Commission v. First Security Bank, 447 F.2d 166, 167 (10th Cir. 1971); Harris v. United States, 413 F.2d 316, 319-20 (9th Cir. 1969); O'Donnell v. Sullivan, 364 F.2d 43, 44 (1st Cir. 1966)). The Court agrees that the checks providing only the amount paid for attorneys' fees are insufficient discovery. The attorney-client privilege and the work product doctrine cannot preclude Starr from conducting an analysis of the reasonableness of Continental's claim for attorneys' fees. Starr should be able to challenge Continental's attorneys' fees with specific information as to the claimed fees. Starr is entitled to know information such as (1) who worked on a particular task, (2) the hourly billing rate for that work, (3) how long the person worked on the task, and (4) generically what the particular task was, *e.g.*, "worked on motion for summary judgment."

Nevertheless, the Court finds that Continental's objection that this request is premature is well-founded. This information requested will not be relevant unless Continental's claim survives any dispositive motion. Accordingly, the Court denies Starr's motion to compel attorneys' fees invoices at this time. If Continental's vexatious refusal to pay claim survives a dispositive motion, then Continental must produce its attorneys' fees invoices, redacted to prevent producing any privileged communication or advice.[2]

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Compel [73] is **GRANTED**, in part, and **DENIED**, in part. Plaintiffs shall provide the reserves amount related to Defendants' claim within seven (7) days of the date of this Order. Defendants' Motion is denied in all other respects.

---

[2]Continental also asked the Court to remove ECF No. 82-4 because it violated E.D. Mo. L.R. 2.17(A)(4). To protect the sensitive financial information contained in this exhibit, the Court placed it under seal.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Compel Attorneys' Fees Invoices [82] is **DENIED** without prejudice. Plaintiffs may reassert this Motion after the Court rules on any dispositive motions.

Dated this 3rd day of December, 2012.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE